IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33229-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD ORMAND LEE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

Brown, A.C.J. — Donald O. Lee appeals his two convictions for third degree rape

of a child. He contends (1) his speedy trial rights were violated, and the trial court erred

in (2) limiting confrontation on the alleged victim's prior false reporting, and (3)

sentencing him beyond the maximum allowed, (4) ordering monitoring penile

plethysmograph testing, and (5) requiring him, without his objection, to pay legal

financial obligations (LFOs) without a finding he had the ability to pay.

We accept without further discussion the State's correct concession to Mr. Lee's

third contention that ordering penile plethysmograph testing for monitoring purposes is

not permitted. RCW 9.94A.030(10); State v. Land, 172 Wn. App. 593, 605, 295 P.3d

782 (2013). Next, we exercise our discretion under State v. Blazina, 182 Wn.2d 827,

832, 344 P.3d 680, review denied, 177 Wn.2d 1016 (2015) and State v. Duncan, 180

Wn. App. 245, 255, 327 P.3d 699 (2014) to decline review of Mr. Lee's fourth contention

because he failed to object to the LFOs at sentencing and no extraordinary circumstances exist meriting review at this time. We reject Mr. Lee's first three contentions, affirm his two convictions, and remand for the trial court to vacate the plethysmograph monitoring condition.

## FACTS

In March 2009, J.W. reported to her mother that she had a sexual relationship with Mr. Lee during the summer and fall of 2008, when he was 42 years old. J.W. detailed multiple sexual encounters with Mr. Lee and presented a sexually-explicit handwritten note from him. On October 9, 2009, officers arrested Mr. Lee on allegations of third degree rape. The trial court found probable cause to detain Mr. Lee and set bail at $50,000. The State, however, did not file an information and, consequently, released Mr. Lee on October 13. Kelso police officers investigated the allegations but determined the acts did not happen in their jurisdiction and forwarded the matter to the Cowlitz County Sheriff's Department. Sheriff's Deputy Corey Robinson began to work up the case, but transferred the matter to the office's detective unit. Detective Ron Broyles took over, but at the time he was addressing health and family matters. He retired in April 2010, at which time the matter "fell through the cracks." Report of Proceedings (RP) at 201.

In May 2012, Bradley Thurman, a newly appointed detective in the sheriff's office, noticed the case against Mr. Lee was still pending. Detective Thurman contacted J.W. who confirmed Mr. Lee was still in the area. On March 6, 2013, the State charged

2

Mr. Lee with five counts of third degree rape of a child. The trial date was continued twice at Mr. Lee's request.

Before trial, Mr. Lee asked to present evidence that J.W. previously made a false rape accusation in June 2008 that she recanted. The State objected, relying on the Rape Shield Law, RCW 9A.44.020 and ER 608. The trial court found the false statement relevant to J.W.'s credibility, but not to whether the sex act was consensual. The court ruled it would allow cross-examination of J.W. about whether she falsely accused another person of a crime to police and her motivation in making the complaint. But, the court barred any mention of sexual conduct.

Trial commenced on December 18, 2013. J.W. testified to multiple sexual encounters between her and Mr. Lee. She described having sex multiple times at a park, including two detailed instances of vaginal sex. She described having sex at Mr. Lee's girlfriend's home and engaging in oral sex while he drove. J.W. testified that she had visited Mr. Lee's mother's apartment that was a block away from her own home. Mr. Lee lived with his aged mother. J.W. could not remember the décor of the apartment or the color of the furniture. Mr. Lee's mother passed away before trial. J.W. testified she often wrote notes to Mr. Lee, but that he wrote her only one note in return, a copy of which the State admitted at trial. Mr. Lee stipulated that he wrote the note, but testified J.W. was not the intended recipient and he did not know how she obtained possession of the note.

3

On cross-examination, defense counsel asked J.W., "You ever made any false accusations about another person to the police." RP at 120. J.W. responded, "Yes" and that she "immediately corrected it." RP at 121. She explained on redirect that her mother made the report to police and J.W. corrected it because she did not "want someone to think that I made a false report. I wanted to make it right." RP at 151.

Mr. Lee testified he lived with his mother in 2008 and she had a purple rocking chair in the living room and a large collection of Betty Boop items. Mr. Lee testified he did not know J.W. and had spoken with her only once, when she approached him while he was outside working on his mother's car. Mr. Lee's step brother testified to their mother's furnishings and decor.

A jury found Mr. Lee guilty of two of the five counts of third degree rape of a child. The court sentenced Mr. Lee to 34 months' incarceration on count one plus 26 months of community custody. The court sentenced Mr. Lee to 26 months' incarceration on count two plus 34 months of community custody. The court ran the sentences concurrently.

The trial court imposed community custody conditions, including an evaluation for sex offender treatment and submission to a "polygraph examination and a plethsymograph [sic] as directed by Corrections Officer or treatment provider." Clerk's Papers (CP) at 69. The State concedes error in the Community Corrections Officer monitoring condition. Without objection, the court imposed $2,641.69 in LFOs, including

4

$2,041.69 in discretionary costs, and as noted above, we decline to review Mr. Lee's

LFO concerns in his appeal.

## ANALYSIS

### A. Speedy Trial

The issue is whether Mr. Lee was denied his right to a speedy trial. He

contends, for the first time on appeal, the four years between arrest and trial violated his

right to a speedy trial under the Sixth Amendment to the United States Constitution.

The Sixth Amendment provides criminal defendants the right to a speedy public

trial. *State v. Monson*, 84 Wn. App. 703, 711, 929 P.2d 1186 (1997). A constitutional

right to a speedy trial is a separate right from procedural rules with a time for trial

provision. *State v. Hudson*, 130 Wn.2d 48, 57, 921 P.2d 538 (1996). The constitutional

right to a speedy trial is not violated by the expiration of a definite time but, rather, by

the expiration of a reasonable time. *Monson*, 84 Wn. App. at 711. The Sixth

Amendment speedy trial right attaches when a charge is filed or an arrest is made

holding one to answer to a criminal charge, whichever occurs first. *State v. Corrado*, 94

Wn. App. 228, 232, 972 P.2d 515 (1999). We review an alleged violation of the

constitutional right to a speedy trial de novo. *State v. Iniguez*, 167 Wn.2d 273, 280, 217

P.3d 768 (2009).

When deciding if a trial delay violates the Sixth Amendment, we consider the

balancing test in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101

(1972). The defendant must first demonstrate "that the length of the delay crossed a

line from ordinary to presumptively prejudicial." *Iniguez*, 167 Wn.2d at 283. Next, we consider (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.

Initially, the State stresses this issue is raised for the first time on appeal. We generally will not consider an issue raised for the first time on appeal unless it involves a "manifest error affecting a constitutional right." RAP 2.5(a)(3). The defendant must show "how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995) (citations omitted). Thus, "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *Id.* (citing *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993)).

Detective Thurman testified about how he became involved in the case and the change in investigating officers. After one officer retired, Detective Thurman opined that the matter "fell through the cracks" for a bit although he was not involved at the time and did not know for certain. RP at 201. No testimony explains how the change in investigating officers affected the State's decision to file charges or why the State did not file charges for another 10 months after Detective Thurman became involved. Because Mr. Lee did not raise the issue below, no record exists to review his Sixth Amendment claims, including the *Barker* four-part factual inquiry. Therefore, we cannot conclude the error is "manifest." RAP 2.5(a)(3). While the State's burden is to explain

the delay, the initial burden was on Mr. Lee to assert the claim. The court was not required to inquire about a Sixth Amendment claim on its own. Moreover, Mr. Lee later requested continuances, evidencing waiver of any speedy trial concerns.

Even assuming a sufficient record exists for us to address the *Barker* factors, Mr. Lee does not satisfy his threshold burden of demonstrating "that the length of the delay crossed a line from ordinary to presumptively prejudicial." *Iniguez*, 167 Wn.2d at 283. He claims he became anxious and a key witness passed away. First, a self-serving statement of anxiety does not show prejudice. *See State v. Cox*, 109 Wn. App. 936, 941, 38 P.3d 371 (2002) (after-the-fact, self-serving claims are insufficient to establish prejudice). Next, testimony from Mr. Lee's mother would simply be cumulative to other witnesses' testimony regarding her apartment's décor and furniture colors, and no sexual misconduct was alleged at that location. Mr. Lee denied J.W.'s presence at the apartment before the jury. Any discrepancy in evidence was properly left to the jury. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Without manifest constitutional error, or a showing of presumptive prejudice, Mr. Lee cannot raise nor prevail in a speedy trial violation issue raised for the first time on appeal.[1]

---

[1] The State invites this court to remand the matter for a reference hearing to create a record for the delay. Generally, this court does not remand matters for a reference hearing when the appellant fails to preserve an issue for review; such actions

## B. Right to Confront J.W.

The issue is whether Mr. Lee was denied his right to confront J.W. under the Sixth Amendment. He contends the trial court improperly excluded mention that the alleged falsely reported crime concerned a rape allegation.

The confrontation clause guarantees a criminal defendant the right to confront witnesses against him or her in a criminal prosecution. *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We review constitutional issues like this de novo. *State v. Price*, 158 Wn.2d 630, 638-39, 146 P.3d 1183 (2006). The right to cross-examine adverse witnesses is not absolute, and "[t]he confrontation right and associated cross-examination are limited by general considerations of relevance." *State v. Darden*, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002) (citing ER 401, ER 403). We review the trial court's limitation of the scope of cross-examination for an abuse of discretion. *Darden*, 145 Wn.2d at 619.

ER 608(b) allows a party to cross-examine a witness about specific instances of past conduct in order to cast doubt on the witness's credibility. But, a victim's past sexual history is not relevant nor admissible to prove credibility as it has little or no relationship to the ability of the witness to tell the truth. *State v. Hudlow*, 99 Wn.2d 1, 9, 659 P.2d 514 (1983). Moreover, such evidence is not admissible under RCW 9A.44.020, the rape shield statute, for the issue of credibility.

---

would be contrary to the purpose of RAP 9.11 (regarding when it is appropriate to request additional evidence on review).

A court may properly prohibit inquiry regarding prior allegation evidence where the prior incident is remote or the proof of the prior allegations and their falsity is weak. *See State v. Demos*, 94 Wn.2d 733, 736-37, 619 P.2d 968 (1980) (evidence of prior allegations is irrelevant absent proof of falsity); *State v. Harris*, 97 Wn. App. 865, 872, 989 P.2d 553 (1999) (evidence that a rape victim has accused others is not relevant and, therefore, not admissible, unless the defendant can demonstrate that the accusation was false); *State v. Mendez*, 29 Wn. App. 610, 611-12, 630 P.2d 476 (1981) (the trial court was within its discretion in excluding prior allegation since the date of the allegation was unknown). Significant here, the prior rape allegation was false as admitted by J.W. during trial. The State argues J.W. explained the rape report had been made by her mother and that J.W. called the police the next day to explain the sex was consensual. There is no Washington case directly on point in such circumstances; nevertheless, cases from California and Indiana are instructive.

In *People v. Franklin*, 30 Cal. Rptr. 2d 376, 380 (Cal. App. 4th 1994), the court held, "[A] prior false accusation of rape is relevant on the issue of a rape victim's credibility." And, in *Conrad v. State*, 938 N.E.2d 852, 855 (Ind. Ct. App. 2010), the court noted that state statutes preclude the introduction of evidence of any prior sexual conduct of an alleged victim of a sex crime, but held, "A common-law exception exists for situations where the victim has admitted the falsity of a prior accusation of rape or where a prior accusation is demonstrably false."

9

Following *Franklin* and *Conrad*, and the multiple Washington cases noting different treatment for false accusations, Washington's rape shield statute does not preclude introduction of evidence to show that a victim has made prior false accusations of rape because it bears on the victim's credibility. It is noted, nevertheless, that a defendant must make an offer of proof to show falsity if he or she wishes to introduce evidence of prior, false allegations as is in this case. A defendant should not be permitted to engage in a fishing expedition in hopes of being able to uncover some basis for arguing that the prior accusation was false.

Arguably, the court did not have tenable grounds to deny Mr. Lee's request to cross-examine J.W. pertaining to her credibility. Thus, the trial court abused its discretion. The next question then is whether the error was reversible.

Although the trial court arguably erred in not allowing evidence that the prior false allegation was rape, any error was harmless. When a court erroneously excludes evidence reversal is required "only if the error, within reasonable probability, materially affected the outcome of the trial." *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993). Both J.W. and Mr. Lee testified regarding their version of the facts. But the State offered a note Mr. Lee admitted writing that was sexually explicit and corroborated J.W.'s version of the events. Moreover, the court allowed evidence showing J.W. made a prior false accusation thereby allowing Mr. Lee to undermine her credibility even without mention of the specific allegation. Given all, we conclude the court's exclusion

10

of evidence was harmless, does not violate the confrontation clause, and, therefore, does not warrant reversal.

### C. Sentence Length

The issue is whether the sentencing court exceeded its authority in concurrently sentencing Mr. Lee to 34 months of confinement on one charge with 34 months' community custody on another. He argues the concurrent sentences could exceed the statutory maximum of 60 months depending on incarceration length.

Whether a sentencing court has exceeded its statutory authority is a question of law we review de novo. *State v. Mann*, 146 Wn. App. 349, 357, 189 P.3d 843 (2008). A challenge to a sentence may be raised for the first time on appeal, and we have the duty and power to correct an erroneous sentence upon its discovery. *State v. Julian*, 102 Wn. App. 296, 304, 9 P.3d 851 (2000).

Third degree rape of a child is a class C felony, for which the maximum sentence is five years. RCW 9A.20.021(c); RCW 9A.44.079(2). The sentencing court may not impose a standard range sentence of confinement and community custody that when combined exceed the offense's statutory maximum. *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). Here, the court sentenced Mr. Lee to 34 months' incarceration on count one plus 26 months of community custody and 26 months' incarceration on count two plus 34 months of community custody to run concurrently. He argues that under this sentence he could potentially serve 34 months' incarceration and 34 months in community custody for a total sentence of 68 months, which is 8

11

months longer than the statutory maximum. But the judgment and sentence states community custody may solely be "extended for up to the statutory maximum term of the sentence." CP at 68.

In instances where the range specified by the court results in a combined total term of confinement and community custody that exceeds the statutory maximum for the crime, our Supreme Court approved a notation like the one in Mr. Lee's judgment and sentence in *In re Personal Restraint of Brooks*, 166 Wn.2d 664, 668, 211 P.3d 1023 (2009). There, the court explained the *Brooks* notation is a provision in the judgment and sentence indicating that the combined term of confinement and community custody 'shall not exceed the statutory maximum. *Id.* at 675. This notation prevents a defendant from serving over his or her statutory maximum sentence and is necessary because "the SRA [makes] it impossible for a trial court to know at the time of sentencing the exact amount of time to be served." *Id.* at 674.

More recently, our Supreme Court held, "When a trial court imposes a sentence of confinement . . . and a sentence of community custody when combined, exceed the statutory maximum for the offense, our holding in *Brooks* still applies. The trial court should include a notation in the judgment and sentence that clarifies that the total term of confinement and community custody actually served may not exceed the statutory maximum." *In re McWilliams*, 182 Wn.2d 213, 218, 340 P.3d 223 (2014).

Here, the concurrent sentence ranges specified by the court results in a combined total term of confinement and community custody that exceeds the statutory

No. 33229-2-III
*State v. Lee*

maximum for the crime. The court, however, specified the amount may not exceed the

statutory maximum. Based on *Brooks* and *McWilliams*, the court did not exceed its

authority by imposing such sentence.

Affirmed, and remanded for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

13

33229-2-III

KORSMO, J. (concurring) — Although I fully agree with, and have signed, the majority opinion, I write separately to stress that Mr. Lee's claim should have been raised as a pre-charging delay due process challenge rather than as a speedy trial claim. Although arrested and briefly held in 2009, charges were not filed until four years later and he was not held to any conditions of release in 2009. There being no charges filed, there was no speedy trial issue presented here.

The case he cites is not apropos. *State v. Corrado*, 94 Wn. App. 228, 972 P.2d 515, *review denied*, 138 Wn.2d 1011 (1999). There the defendant was incarcerated for 11 months while the State appealed from the dismissal of charges by the trial court after the original conviction had been reversed on appeal. *Id*. at 231-32. Charges having been filed, that case necessarily was a speedy trial issue; the twist there was that the defendant remained incarcerated after the dismissal. *Id*. at 232. As Division Two of this court correctly summed up the situation: "Corrado was under actual restraint, which mandates analysis under the Sixth Amendment." *Id*.

Here, there was no actual restraint. Mr. Lee was arrested on probable cause in 2009 and bail was set, but no charges were filed at that time. He was under no conditions

of release, bail, or any other form of pretrial restraint after the 72 hour period. The Sixth

Amendment was not implicated.

Instead, this was a Fourteenth Amendment due process charging delay case, if it

was anything. As the majority opinion demonstrates, that issue is not manifest. With that

observation, I concur with the majority's resolution of the case.

Korsmo, J.